JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Gregory Nelson

**(b)** County of Residence of First Listed Plaintiff **Berks**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Miller Law Group, PLLC, 25 Stevens Avenue
West Lawn, PA  19609 (610) 670-9000

## DEFENDANTS

Bollman Hat Factory

County of Residence of First Listed Defendant **Lancaster**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF
          THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **INTELLECTUAL** | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. Sections 2000e to 2000e-17

Brief description of cause:
Employment Discrimination based on Race and Color, Wrongful Termination

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*:   JUDGE _____   DOCKET NUMBER _____

DATE   04/28/2022

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: ___ Gregory Nelson c/o Miller Law Group, PLLC, 25 Stevens Ave., West Lawn, PA 19609

Address of Defendant: ___ Bollman Hat ___ Factory, 110 E. Main St., Adamstown, PA 19501

Place of Accident, Incident or Transaction: ___ 110 E. Main St., Adamstown, PA 19501

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☐

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 04/28/2022 _____ *Attorney-at-Law / Pro Se Plaintiff*   86007
*Attorney I.D. # (if applicable)*

---

CIVIL: (Place a √ in one category only)

A.   *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☑ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
     *(Please specify):* _____

B.   *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
     *(Please specify):* _____

---

ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Larry W. Miller, Jr., Esquire, counsel of record *or pro se plaintiff*, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

DATE: 04/28/2022 _____ *Attorney-at-Law / Pro Se Plaintiff*   86007
*Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

## UNITED STATES DISTRICT COURT
for the

Eastern District of Pennsylvania

|  |  |  |
|---|---|---|
| | ) | Case No.5:22-cv-00228-JMG |
| | ) | |
| | ) | |
| **GREGORY NELSON,** | ) | |
| _Plaintiff,_ | ) | |
| | ) | |
| **v.** | ) | Jury Trial:   [X] Yes       [ ] No |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **BOLLMAN HAT FACTORY,** | ) | |
| _Defendants._ | ) | |

## SECOND AMENDED COMPLAINT FOR EMPLOYMENT DISCRIMINATION

AND NOW, Comes, Plaintiff, Gregory Nelson, by and through his attorneys, Larry W. Miller, Jr., Esquire, and the Miller Law Group, PLLC, and files this second Amended Complaint against Defendants, and in support thereof, avers as follows:

## PARTIES TO THE COMPLAINT

1.      Plaintiff is Gregory Nelson, an adult individual who resides at 210 N. Church Street, Mohnton, Berks County, PA  19540.  (hereinafter "Nelson").

2.      The Defendant is the employer, Bollman Hat Factory a Pennsylvania company with a primary business address of 110 E. Main Street, Adamstown, Lancaster County, PA 19601 (hereinafter "Bollman").

## BASIS FOR JURISDICTION

3.    The acts or occurrences giving rise to this complaint all occurred in Lancaster County,

Pennsylvania.

4.    This action is brought for discrimination in employment pursuant to Title VII of the Civil

Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17.


## AS AND FOR A FIRST CAUSE OF ACTION

5.    Bollman discriminated against Nelson based upon his race and color.

6.    The alleged racial slurs and discriminatory acts began in approximately 2010 and

continued until Nelson's termination on February 9, 2021.


## AS AND FOR A SECOND CAUSE OF ACTION

7.    The discriminatory conduct complained in this action includes unequal terms and

conditions of employment, retaliation, and the wrongful termination of Nelson's employment.


## FACTS OF THE CASE

8.    Nelson began working for Bollman on January 3, 2003, as a machine operator. He was a

material handler when he was terminated.

9.    Until the alleged incidents which led to Nelson's termination, Nelson was an otherwise

dedicated employee and had been given "Wally Service Awards" and other commendations on

27 occasions during his 18-year employment at Bollman.  Nelson enjoyed working at Bollman

and took an avid interest in cross-training to expand his knowledge at Bollman.

10.     At some point between 2018-2019, Bollman introduced walkie-talkie radios for communication within the facilities.  The CEO, President, HR Director, all Managers, Nelson and a fellow material handler used the radios and all had access to hear every aired communication.  When using the radio to call Nelson, Manager Jamie Dale (Dale) would refer to Nelson as "Dark Vader" inappropriately referring to Nelson's skin color.

11.     On one such occurrence, another manager, Greg Leach (Leach) after hearing the derogatory reference, came from another floor to speak with Nelson about him being called "Dark Vader."  An appalled Leach said, "that's not right" and indicated he would speak with Rich Bainbridge (who was in charge of manufacturing).  But nothing changed. Dale continued to refer to Nelson as "Dark Vader" in open radio communications and Bollman blatantly did nothing to correct it. Other employees in charge would tell Nelson, "I'll take care of it" but, the racial discrimination never stopped.

12.     In April 2017, in the presence of Mark John and Nelson, Manager Wally Rotiserie was talking about food stamps and how "spics and niggers" were on them. Nelson interrupted Wally, expressed his disgust with the racial slurs and walked away. Nelson reported this incident to his then supervisor who directed him to file a report with Bollman's Human Resources Department, which Nelson did. Bollman offered an apology to Nelson but Bollman took no further action regarding the matter.

13.     While working, Dale was having a conversation with other employees about the Philadelphia Eagles. Nelson, who was standing nearby, attempted to add to the conversation when Dale sternly said to Nelson "Turn your black ass around and get back to work."

14.     The racial slur "nigger" was uttered frequently to and around Nelson and in spite of Nelson's known objections and reports. Some managers would smirk or smile when they

overheard the racial slurs. During Nelson's 18 years of employment, Bollman did nothing to change the discriminatory behaviors of its employees despite repeated requests to do so by Plaintiff.

15.    Meredith Miller (Miller) became Nelson's direct supervisor in June of 2020. On June 8, 2020, Nelson met with Miller to review his job description and discuss the goals and expectations for Nelson.  On June 11, 2020, Nelson was asked to sign a summary of the June 8, 2020, meeting with Miller called "Notes of discussion with Greg Nelson" (Hereinafter "Notes"). (EXHIBIT A)

16.    On or about August 10, 2020, Nelson observed two Bollman maintenance employees removing copper and other scrap materials out of the dumpsters and place them into the employees' private owned pick-up trucks which is expressly against Bollman company policy. Nelson made a video of this activity and shared the video and reported the incident to Miller approximately August 10, 2020.

17.    Nelson expected confidentiality when he reported the theft of materials to Miller. After the report was made, Nelson was subjected to harassment from other employees along with being falsely accused of unprofessional behavior. Nelson found out from other  employees they knew all about the report he made regarding the theft of the materials, despite the implied confidentiality. From that point, Nelson felt he could no longer trust his chain of command.

18.    While on Covid-19 quarantine, Nelson received a call from H.R. Director Kim Hubric (Hubric) at his home and was told he was being placed on paid administrative leave for 7 days pending an investigation. When he returned to work, Nelson was told pursuant to the stipulations listed in a document called "Last Chance Agreement" (Hereinafter "Agreement"). (EXHIBIT B) The document specified a "formal conversation" with Nelson on June 10, 2020. The only

evidence of a "formal conversation" is the "Notes" document from June 8, 2020, signed on June 11, 2020, for which Nelson believed was to review his job description and set goals under his new supervisor, not a reprimand nor a write-up. Additionally, the "Agreement" stated a second "formal meeting" (purportedly held as another reprimand) occurred on August 13, 2020. The original "Notes" document had been visibly altered to include a note in the right margin which appears to be written by Doug Sachs which reads "Reviewed with Greg 8/13/2020" with the initials "GN". Nelson recalls no such meeting on August 13, 2020, and moreover states that is not his handwriting for the initials "GN" on the modified "Notes" document. (*EXHIBIT C*)

19.     Nelson returned to work on or about November 30, 2020 and signed the "Last Chance Agreement" after objecting to the document including the unknown meeting of August 13, 2020. Nelson began feeling he was being held to standards that were not being used for other employees in the company and that he had become a target for termination.

20.     Throughout the month of December, the tension at Bollman surrounding Nelson was palpable. When walking through the maintenance department, the employee he reported for stealing copper said to Nelson "I can't believe your black ass is still here."

21.     On or about January 6, 2021, Nelson observed a picture of himself (taken from the Inc. magazine featured company article) hanging on the Maintenance Manager's door with a written caption which read "$.50 reward for anyone who catches this person". (EXHIBIT D) Nelson instantly felt demeaned, racially threatened, and no longer felt comfortable at Bollman. Nelson reported the incident to Miller and by the end of the day on January 7, 2021, Nelson was called Hubric's office to discuss the incident. Hubric apologized to Nelson and advised there would be an investigation. Nelson asked Hubric for answers to four (4) questions: 1) How long had the picture been posted on the door? 2) Why was it posted? 3) What was the meaning of the caption?

4) Who posted it? After the conversation with Hubric, Nelson figured it out that the person who posted the offensive picture was the Maintenance Manager, Kevin Fry. Nelson was so disturbed by the incident he began seeing a therapist to cope with the anxiety and stress of the mistreatment and discrimination while continuing to work at Bollman and he continued to see the therapist through December 2021.

22.     Nelson was called to the HR Department on January 11, 2021, to meet with Hubric and Miller.  Hubric apologized again about the posting incident and stated that disciplinary actions will be taken upon the person who did it. Nelson advised Hubric that he could not keep going through this torment at work, repeatedly feeling discriminated against while nothing was being done by Bollman to correct it.

23.     Nelson went to Company President Don Rongione's (Rongione) office on or about the morning of January 13, 2021. While Nelson was in Rongione's office CEO Craig Womelsdorf (Womelsdorf) arrived. Womelsdorf acknowledged that he knew of the picture incident and apologized to Nelson for that type of unacceptable behavior. Womelsdorf was unable to explain the reasoning for the picture and said confidentiality prevented him from disclosing who had done such a disrespectful act.

24.     On January 18, 2021, Nelson went to the HR Department and spoke with Carol to review his personnel file for the purpose of checking the date of the slur incident report from 2017 however, the report of the racial slur was no longer in Nelson's file. Carol could offer no explanation for the missing report other than the former HR Director (who retired from the company in June 2019) may have removed it. Throughout the rest of the meeting with Carol, she interspersed utterances to Nelson of "I know what you're doing." "I know you're getting a lawyer." "He didn't mean what he did." "It was a joke." "If you are not happy here in this

company, then why are you still here?' "Why not get another job?" Finally, feeling completely demoralized and absolutely unheard, Nelson said nothing further and left Carol's office.

25.      While in the meeting with Carol in the HR Department on January 18, 2021, Womelsdorf came by and asked Nelson to come to his office to speak with him, which Nelson did after leaving Carol's office. Again, acknowledging the objectionable incidents Nelson had encountered, Womelsdorf explained to Nelson that "everyone" (at Bollman) will have to do "Harassment Training" on Thursday, February 4, 2021. This was the first time in Nelson's 18-year history with Bollman that any sensitivity/diversity training was being conducted. Womelsdorf went on to ask Nelson if he was willing to accept an apology from the person who posted the offensive picture on the Maintenance Manager's door. Due to the level of disgust that he felt, Nelson advised Womelsdorf he could not accept an apology from the offender.

26.      On February 3, 2020, Bollman stated that Nelson engaged in an aggressive and profane-filled conversation with Jamie Dale. Nelson vehemently denies those allegations and obtained written statements from three (3) employees who were in the very same area and witnessed the conversation. The employees specifically refuted that any raised voices or profanity was used by Nelson.

27.      Bollman also stated that Nelson approached another employee on February 3, 2021, asking if she reported him to HR.  Nelson denies this ever happened.

28.      On February 4, 2021, Miller stated that Nelson used inappropriate language to her when she asked him a question.  Nelson denies that occurred.

29.      Nelson logged on and attended the audio Discriminatory Harassment Training on February 4, 2021.  At the end of the training, Nelson had some questions for which he was not provided answers. Nelson was asked to sign an acknowledgement form for the training he

received. Because previous acknowledgement forms that Nelson signed turned out to be disguised as write-ups and reprimands, he respectfully refused to sign the training form until he could speak with H.R. Department about his questions. Miller advised Nelson that she was marking Nelson's training form as "Refused to sign" instead of resolving Nelson's questions (EXHIBIT E).

30.     On or about January 29, 2021, as Nelson was moving cardboard strips via the elevator, the cardboard shifted and spilled. Nelson repositioned the cardboard promptly. Miller advised Nelson she received an email complaining that Nelson intentionally held up the elevator causing other employees to be inconvenienced. Nelson determined the email came from Dale and was just another malicious attempt to discredit Nelson.

31.     Miller stated she requested Nelson to move some cardboard on February 4, 2021, which he did. Miller observed on February 5, 2021, the cardboard was still in place (another plant hadn't picked it up the previous evening. Miller requested the cardboard be moved again to a different location. Miller stated that Nelson became angry and walked away. Nelson denies this allegation.

32.     On February 8, 2021, Miller requested Nelson to use an Unmounted Ring Machine that was deemed unsafe to use by Miller.  Nelson reminded Miller that she advised Nelson that the machine was not safe to use for which Miller advised Nelson "You have my permission to use it (the machine)." Nelson respectfully refused. (EXHIBIT F)

33.     Nelson was terminated from Bollman on February 9, 2021. The Notice of Termination of Employment (EXHIBIT G) cited Nelson violated the "Agreement" by his specific behavior of February 3 and 4 which Nelson disagrees ever occurred.

34.     The abuse which occurred on a regular basis against Plaintiff was continuous, ongoing, severe, and pervasive, causing Plaintiff to have to seek Psychiatric counseling to assist him through these times.

35.     Each of the employees cited herein were employees or management of Defendant and acting on Defendant's behalf at the time of their actions.  Each of the actions cited herein were reported to Management of Defendant, and Defendant endorsed the actions by failing and refusing to take any disciplinary actions to curb the behavior.

36.     Defendant took no meaningful actions to eliminate the discriminatory actions of the employees and management of Defendant.  In fact, management actively altered the personnel file of Plaintiff in order to hasten the firing of Plaintiff after management expressed clear disgust over Plaintiff because of the color of his skin.  Such actions subject Defendant to respondeat superior liability under Federal law.

37.     The hateful spews of racial name calling, harassment, and vicious behavior of the employees and management of Defendant, and lack of any meaningful actions on the part of the Defendant to curb these behaviors, created a work environment that any reasonable person would find detrimental to their mental health and ability to live life as a citizen of this country has a right to experience.

38.     The workplace hostile work environment created and condoned by Defendant was permeated with discriminatory intimidation, ridicule, and insult so severe and pervasive that it created an abusive working environment for Plaintiff.

## EXAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

39.     Nelson filed a Pre-Charge Inquiry on January 29, 2021, and discrimination charge against

Bollman through U.S. Equal Employment Opportunity Commission (EEOC) on February 11,

2021, under charge number 530-2021-01702.

40.     After completing their investigation, the EEOC issued Nelson a Dismissal and Notice of

Rights with Notice of Suit Rights dated October 21, 2021. (*EXHIBIT H*)

## RELIEF

41.     WHEREFORE, Plaintiff prays this Court enter judgment and decree for Plaintiff and

against the Defendants as follows:

      A.     A judgment in favor of Plaintiff finding that Defendants egregious and outrageous behavior against Plaintiff was in direct violation of Title VII of the Civil Rights Act of 1964, amended.

      B.     A judgment in favor of Plaintiff finding that the Defendants willfully and intentionally discriminated against Plaintiff in direct violation of Title VII of the Civil Rights Act of 1964, amended which resulted in Plaintiff's wrongful termination.

      C.     Ordering that Defendants reimburse Plaintiff for his lost wages since his wrongful termination.

      D.     Ordering that Defendants be responsible for Plaintiff's out of pocket expenses for therapy.

      E.     Ordering that Defendants be required to pay all costs of this action, including all attorney's fees.

      F.     Ordering that due to Defendant's egregious and outrageous behavior Defendants be required to pay Plaintiff punitive damages in an amount of not less than Three Hundred Thousand Dollars ($300,000.00).

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11

Respectfully Submitted,

Dated: April 28, 2022                  /s/Larry W.Miller, Jr., Esquire
                                       Larry W. Miller, Jr., Esquire
                                       Attorney ID # 86007
                                       Miller Law Group, PLLC
                                       25 Stevens Avenue
                                       West Lawn, PA 19609
                                       Voice:(610) 670-9000
                                       Fax:   (610) 670-9901