**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GREGORY NELSON | : | |
| | : | |
| vs. | : | CIVIL ACTION NO. 22-00228 |
| | : | |
| BOLLMAN HAT FACTORY | : | |

## <u>ORDER</u>

**AND NOW**, this _____ day of _____, 2022, upon consideration of Defendant, Bollman Hat Company's (incorrectly identified as Bollman Hat Factory) Motion to Dismiss Plaintiff's Second Amended Complaint (ECF Doc. No. 9), and any response thereto, it is hereby **ORDERED** and **DECREED** that Defendant's Motion is **GRANTED**.

It is **ORDERED** and **DECREED** that Plaintiff's Second Amended Complaint against Defendant Bollman Hat Company is hereby **DISMISSED WITH PREJUDICE**.

BY THE COURT:

_____
J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GREGORY NELSON | : | |
| | : | |
| vs. | : | CIVIL ACTION NO. 22-00228 |
| | : | |
| BOLLMAN HAT FACTORY | : | |

## DEFENDANT BOLLMAN HAT COMPANY'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant Bollman Hat Company, by and through its undersigned counsel, Marshall Dennehey Warner Coleman & Goggin, respectfully moves to dismiss Plaintiff's Second Amended Complaint (ECF Doc. No. 9) pursuant to Federal Rule of Civil Procedure 12(b)(6). In support thereof, Defendant submits the attached Memorandum of Law.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER**
**COLEMAN & GOGGIN**

BY: _____
LEE C. DURIVAGE
Attorney ID No. 205928
2000 Market Street, Suite 2300
Philadelphia, PA 19103
P: (215) 575-2584/F: (215) 575-0856
E-mail: lcdurivage@mdwcg.com

Attorney for Defendant

Dated: May 12, 2022

## **TABLE OF CONTENTS**

I.    Introduction..............................................................................................................1

II.   Factual Background and Procedural History ..........................................................1

III.  Legal Standard ........................................................................................................4

IV.   Argument .................................................................................................................5

    A.   Plaintiff's First Cause of Action in His Second Amended Complaint Fails to Plead Facts Sufficient to State a Claim of Race and Color Discrimination under Title VII. .................5

    B.   Plaintiff's Second Cause of Action in His Second Amended Complaint Fails to Pleads Facts Sufficient to State a Claim of Wrongful Termination or Unequal Terms and Conditions of Employment under Title VII....................................................................................9

    C.   Plaintiff's Second Cause of Action in His Second Amended Complaint Fails to Plead Facts Sufficient to State a Claim of Retaliation Pursuant to Title VII. ...........................12

V.    Conclusion .............................................................................................................16

Defendant's Certification for Submission of Dispositive Motion ...................................17

Certificate of Service ......................................................................................................18

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GREGORY NELSON | : | |
| | : | |
| vs. | : | CIVIL ACTION NO. 22-00228 |
| | : | |
| BOLLMAN HAT FACTORY | : | |

**DEFENDANT BOLLMAN HAT COMPANY'S MEMORANDUM**
**OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**
**PLAINTIFF'S SECOND AMENDED COMPLAINT**

**I.    INTRODUCTION**

Defendant, by and through its counsel, moves the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Second Amended Complaint (ECF Doc. No. 9), with prejudice. The grounds upon which Defendant's Motion is based are set forth below.

**II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On January 18, 2022, Plaintiff filed his lawsuit, alleging "a first cause of action" for alleged discrimination on the basis of Plaintiff's race and color (presumably pursuant to Title VII) and a "second cause of action" for "unequal terms and conditions of employment, retaliation and the wrongful termination of Plaintiff's employment," citing to the Pennsylvania Labor Relations Act ("PLRA"). Following the parties' meet and confer regarding the grounds for an anticipated motion to dismiss, Plaintiff filed an Amended Complaint, wherein he solely omitted any reference to the PLRA. Given that this amendment failed to cure many of the substantive deficiencies raised by Defendant in the parties' meet and confer, Defendant moved for dismissal of Plaintiff's Amended Complaint. Thereafter, Plaintiff filed a Second Amended Complaint.

Plaintiff alleges (in support of his "first cause of action") that "[t]he alleged racial slurs and discriminatory acts began in approximately 2019 and continued until [Plaintiff's] termination on

February 9, 2021. Pl.'s Second Am. Compl., at ¶ 6 (ECF Doc. No. 9, at p. 4). He further alleges

that in April 2017, an employee made a racially derogatory remark in front of Plaintiff and another

employee. Pl.'s Second Am. Compl., at ¶ 12 (ECF Doc. No. 9, at p. 5). Plaintiff also claims that,

"at some point between 2018-2019," an employee referred to Plaintiff as "Dark Vader" when using

the company's walkie-talkie communication system around the facilities and alleges that while

employees suggested to him that they would "take care of it," the conduct continued. Pl.'s Second

Am. Compl., at ¶ 10-11 (ECF Doc. No. 9, at p. 5). Additionally, Plaintiff alleges that, on another

unspecified occasion, an employee rebuffed Plaintiff's attempt to add to a conversation about the

Philadelphia Eagles, telling him to "[t]urn [his] black ass around and get back to work." Pl.'s

Second Am. Compl., at ¶ 13 (ECF Doc. No. 9, at p. 5). Plaintiff further alleges that racial slurs

were used in his presence during the course of his 18 years of employment, although Plaintiff's

Second Amended Complaint fails to identify any details whatsoever regarding his allegation and

makes no more than a threadbare claim that he repeatedly complained to Defendant about it. Pl.'s

Second Am. Compl., at ¶ 14 (ECF Doc. No. 9, at pp. 6-7).

     In June of 2020, Plaintiff states that Meredith Miller became his new direct supervisor.

Pl.'s Second Am. Compl., at ¶ 15 (ECF Doc. No. 9, at 6). Plaintiff alleges that, shortly after the

implementation of this change, the two met to review the job description and discuss goals and

expectations for Plaintiff and that he was asked to sign a summary of the meeting called "Notes of

discussion with Greg Nelson." Pl.'s Second Am. Compl., at ¶ 15 (ECF Doc. No. 9, at p. 6).

     In August of 2020, Plaintiff alleges that he observed and video recorded two employees

removing copper and other scrap materials out of Defendant's dumpsters and into private vehicles.

Pl.'s Second Am. Compl., at ¶ 16 (ECF Doc. No. 9, at p. 6). Plaintiff alleges that he reported the

incident to Ms. Miller, his report was not kept confidential, and that he was thereafter "subjected

to harassment from other employees along with being falsely accused of unprofessional behavior." Pl.'s Second Am. Compl., at ¶ 17 (ECF Doc. No. 9, at p. 6).

Plaintiff next asserts that, sometimes after reporting the theft, he was informed by Defendant's Human Resources Director that he was being placed on paid administrative leave for seven days pending an investigation and that he was provided with a "Last Chance Agreement" upon his return to work on or about November 30, 2020. Pl.'s Second Am. Compl., at ¶¶ 18-19 (ECF Doc. No. 9, at pp. 6-7).

On January 6, 2021, Plaintiff alleges that he noticed a picture of himself hanging on the Maintenance Manager's office door with a written caption which read, "$.50 reward for anyone who catches this person." Pl.'s Second Am. Compl., at ¶ 21 (ECF Doc. No. 9, at pp. 7-8). Plaintiff states that he then reported the incident to Ms. Miller and Defendant's Human Resources Director later advised him that she would investigate the matter. Pl.'s Second Am. Compl., at ¶ 21 (ECF Doc. No. 9, at pp. 7-8). On January 11, 2021, Plaintiff alleges Defendant's Director of Human Resources advised him that "disciplinary actions will be taken upon the person [who posted the picture]" and Plaintiff allegedly advised Defendant's Director of Human Resources that "he could not keep going through this torment at work, repeatedly feeling discriminated against while nothing was being done by Bollman to correct it." Pl.'s Second Am. Compl., at ¶ 22 (ECF Doc. No 9, at p. 8).

On February 3, 2021, Plaintiff alleges that he was advised by Defendant that he had engaged in an aggressive and profanity-filled conversation with a co-worker earlier that day, and that he was also advised by Defendant that he had impermissibly approached another employee that same day, asking if she had reported him to human resources. Pl.'s Second Am. Compl., at ¶¶ 26-27 (ECF Doc. No. 9, at p. 9).

On February 4, 2021, Plaintiff claims that Ms. Miller advised him that he had used inappropriate language to her when she asked him a question and that on February 5, 2021, Plaintiff states that Ms. Miller advised him that he had angrily refused to move cardboard after being asked to do so by her the prior day. Pl.'s Second Am. Compl., at ¶¶ 28, 31 (ECF Doc. No. 9, at pp. 8-9). On February 8, 2021, Plaintiff alleges that he was asked by Ms. Miller to operate a machine she had previously suggested was not safe to use and Plaintiff refused to do so (after Ms. Miller advised him that he had her permission to use the machine). Pl.'s Second Am. Compl., at ¶ 32 (ECF Doc. No. 9, at p. 10). Plaintiff alleges that he was terminated from his employment on February 9, 2020 for violation of the Last Chance Agreement and generally "disagrees" that his behavior on February 3 and 4 ever occurred. As set forth below, Plaintiff's claims against Defendant, even with the the amendments to Plaintiff's initial Complaint and Amended Complaint, are deficient as a matter of law and must be dismissed, with prejudice.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The purposes of a 12(b)(6) motion are to test the legal sufficiency of the complaint and to "streamline litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989); *Holder v. City of Allentown*, 987 F.2d 188, 194 (3d Cir. 1993). Therefore, when it appears from the face of the pleading that a plaintiff can prove no set of facts that would entitle him to relief, the court must dismiss plaintiff's claims. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Further, a complaint may be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on its face." *See Odom v. Erie Ins. Exch.*, 2008 WL 5188828, at *1

*(W.D. Pa. Dec. 10, 2008)* (citing ***Bell Atlantic Corp. v. Twombly***, *550 U.S. 544*); *see also*

***Ashcroft v. Iqbal***, *556 U.S. 662, 684 (2009)* (stating that the decision in ***Twombly***, "expound[s]

the pleading standard for 'all civil actions.'"). Indeed, the United States Supreme Court has

unequivocally determined that the pleading standard under Federal Rule of Civil Procedure 8

demands more than an "unadorned, the defendant-unlawfully-harmed-me accusation." ***Iqbal***, *556*

*U.S. at 678*. Moreover, a pleading that offers "labels and conclusions" or "a formulaic recitation

of the elements of a cause of action will not do." ***Id***. Nor does a complaint suffice if it tenders

"naked assertion[s] 'devoid of further factual enhancement.'" ***Id*** ., citing ***Twombly***, *550 U.S. at*

*557*; *see also* ***Evancho v. Fisher***, *423 F.3d 347, 351 (3d Cir. 2005),* citing ***In Re Burlington***

***Coat Factory Sec. Litig***., *114 F.3d 1410, 1429-30 (3d Cir. 1997)* (stating that "a court need not

credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to

dismiss"). Where, as here, Plaintiff cannot prove any facts in support of his claims, Plaintiff's

claims should be dismissed as a matter of law.

## IV.    ARGUMENT

A. Plaintiff's First Cause of Action in His Second Amended Complaint Fails to Plead Facts Sufficient to State a Claim of Race and Color Discrimination under Title VII.

In Plaintiff's "First Cause of Action," he alleges that Defendant "discriminated against

[Plaintiff] based upon his race and color" and "[t]he alleged racial slurs and discriminatory acts

began in approximately 2010 and continued until Nelson's termination on February 9, 2021."[1]

While it is unclear what theory of liability Plaintiff is attempting to assert in his First Cause of

Action, Defendant presumes that Plaintiff is attempting to allege a hostile work environment claim

(as the Second Cause of Action refers to wrongful termination and retaliation). It is well-

---

[1] Plaintiff's cover sheet for his Second Amended Complaint provides a "brief description of cause," noting "[e]mployment discrimination based on Race and Color, Wrongful Termination."

established that a plaintiff seeking to establish a hostile work environment or harassment claim must demonstrate "by the totality of the circumstances, the existence of a hostile or abusive environment which is severe enough to affect the psychological stability of a minority employee." **_Huggins v. Coatesville Area School Dist._**, *2010 WL 4273317, \*5 (E.D. Pa. 2010)* (applying the test in a Title VII case), *citing*, **_Aman v. Cort Furniture Rental Corp._**, *85 F.3d 1074, 1081 (3d. Cir. 1996)*. A plaintiff attempting to establish a hostile working environment claim against an employer must prove: (1) that he or she suffered intentional discrimination on the basis of his or her protected category; (2) that the discrimination was pervasive and regular; (3) that the discrimination detrimentally affected the plaintiff; (4) that the discrimination would detrimentally affect a reasonable person who belonged to the same protected class; and (5) the existence of *respondeat superior* liability. **_Spence v. Lahood_**, *2013 WL 355913, \*3 (D.N.J. 2013)*, *citing* **_Huston v. Procter & Gamble Paper Prods. Corp._**, *568 F.3d 100, 104 (3d. Cir. 2009)*. The "sine qua non of a hostile work environment claim is a 'workplace . . . permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]'" **_McKinnon v. Gonzales_**, *642 F. Supp. 2d 410, 421 (D.N.J. 2009)*, *quoting* **_Nat'l R.R. Passenger Corp. v. Morgan_**, *536 U.S. 101, 116 (2002)*.

The Supreme Court has emphasized that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." **_Clark County School Dist. v. Breeden_**, *532 U.S. 268, 270-271 (2001)*, *quoting*, **_Harris v. Forklift Systems, Inc._**, *510 U.S. 17, 23 (1993)*. In fact, "[d]iscriminatory conduct must be so 'severe and

pervasive' that it actually 'alter[s] the conditions of [the victim's] employment and create[s] an abusive working environment'" and "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Huggins*, *2010 WL 4273317 at \*5*, *citing*, *Faragher v. Boca Raton*, *524 U.S. 775, 786-788 (1998)* (noting that "Title VII is not a 'general civility code'…and a review of a range of prior discrimination cases from this Circuit…illustrates that the conduct alleged…falls well short of the applicable legal threshold"); *Walker v. Dep't of Revenue*, *2010 WL 3937159, \*5 (W.D. Pa. 2010)* (finding plaintiff's allegations that her supervisor was rude and gave her hateful looks were insufficient to support a hostile work environment); *Lamb v. Montgomery Township*, *734 Fed. Appx. 106, 112 n.8 (3d. Cir. 2018)* (noting that plaintiff could not establish "severe or pervasive discrimination" to sustain a hostile work environment claim where she relies on one incident of a purported "crass" comment from a male co-worker and further stating that her assertion that occasional homophobic slurs she overheard in the workplace "are not sufficient to establish a hostile work environment"); *Woodard v. PHB Die Casting*, *255 Fed. Appx. 608, 609-610 (3d. Cir. 2007)* (rejecting plaintiff's hostile work environment claim and stating that the alleged incidents "are the type of offhand comments that are insufficient to support a hostile work environment claim" and the facts alleged are "not enough for a trier of fact to conclude that discriminatory conduct in the workplace amounted to a change in the terms or conditions of [plaintiff's] employment").

Here, Plaintiff's Second Amended Complaint generally alleges that "racial slurs and discriminatory acts began in approximately 2010 and continued until Nelson's termination on February 9, 2021." Pl.'s Second Am. Compl. at ¶ 6 (ECF Doc. No. 9, at p. 4). Plaintiff, however, makes virtually no effort to allege facts sufficiently addressing the actual elements of a hostile

work environment claim. Indeed, Plaintiff's factual allegations consist of: (a) an employee using racial language in his presence in 2017; (b) an employee referring to him a "Dark Vader" in 2018 or 2019; (c) an employee advising Plaintiff to "turn [his] black ass around and get back to work" at an undefined time; and (d) racial slurs that were used in his presence over an 18 year time period. Notwithstanding the fact Plaintiff failed to mention the purported racial language referenced in (b)-(d) in his EEOC Charge of Discrimination and these events would be time-barred for failing to file a complaint with the EEOC within 300 days of the purported harassment, Plaintiff's allegations fall far short of what is required to sustain a hostile work environment claim.

Quite simply, the most that can be said of Plaintiff's Second Amended Complaint is that it is a "formulaic recitation of the elements" of a hostile work environment claim. For example, as noted, a plaintiff seeking to establish a hostile work environment must demonstrate, "the existence of a hostile or abusive environment which is severe enough to affect the psychological stability of a minority employee." *__Huggins,__* *2010 WL 4273317, at \*5.* To meet this, Plaintiff broadly alleges a hostile work environment that is both "severe and pervasive," and that caused him to seek psychiatric help. Pl.'s Second Am. Compl. at ¶¶ 34, 38 (ECF Doc. No. 9, at p. 11). Additionally, as also noted, the third element of a hostile work environment claim is that "the discrimination would detrimentally affect a reasonable person who belonged to the same protected class." *__Spence__*, *2013 WL 355913, at \*3*. To meet this, Plaintiff alleges that the conduct complained of therein (including an alleged eighteen-year period of "vicious behavior") "created a work environment that any reasonable person would find detrimental to their mental health[.]" Pl.'s Second Am. Compl. at ¶ 37 (ECF Doc. No. 9, at p. 11).

In short, Plaintiff's Second Amended Complaint is devoid of any facts that would support a finding of "severe" or "pervasive" conduct at all and Plaintiff fails to plead facts that any alleged

conduct amounted to a change in the terms or conditions of his employment. There is nothing in the pleading that supports any claim that Plaintiff was subject to intentional discrimination by the Defendant because of his race or color and Plaintiff's Second Amended Complaint is devoid of any conduct that would support *respondeat superior* liability. The United States Supreme Court has made it clear that the anti-discrimination laws are "not a 'general civility code,'" and the "cases from this Circuit…illustrates that the conduct alleged…falls well short of the applicable legal threshold." *See **Huggins**, 2010 WL 4273317 at \*5.* Based upon the foregoing, Plaintiff's hostile work environment claim in Plaintiff's First Cause of Action must be dismissed as a matter of law.

B. <u>Plaintiff's Second Cause of Action in His Second Amended Complaint Fails to Pleads Facts Sufficient to State a Claim of Wrongful Termination or Unequal Terms and Conditions of Employment under Title VII.</u>

In Plaintiff's "Second Cause of Action," he alleges that "[t]he discriminatory conduct complained of in this action includes unequal terms and conditions of employment, retaliation, and the wrongful termination of [Plaintiff's] employment." Pl.'s Second Am. Compl., at ¶ 7 (ECF Doc. No. 9, at p. 4). Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to "discharge any individual, or otherwise discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of race discrimination, absent direct evidence, a plaintiff must plead sufficient facts demonstrating that: (1) he belongs to a protected class; (2) he was qualified for his position; (3) he was subject to an adverse employment action; and (4) *the action occurred under circumstances giving rise to an inference of intentional discrimination*. **See Jones v. School Dist. of Philadelphia**, *198 F.3d 403, 410-411 (3d Cir. 1999)*. (emphasis added).

Though the prima facie case is "an evidentiary standard, [and] not a pleading requirement," *see **Hundley v. Wawa, Inc**., 2021 WL 2555440, at \*6 (E.D. Pa. June 22, 2021)* (citing **Swierkiewicz v. Sorema, N.A**., *534 U.S. 506, 510 (2002)),* to survive a motion to dismiss,

"[plaintiff] bears the burden of pleading sufficient factual matter that permits the reasonable inference that [he] was terminated . . . *because of [his] race*[.]" *See **Golod v. Bank of Am. Corp.**, 403 F. App'x. 699, 702 (3d Cir. 2010),* citing ***Goosby v. Johnson & Johnson Med., Inc.***, *228 F.3d 313, 318-19 (3d Cir. 2000)* (emphasis added). The Third Circuit has explained that an inference of discrimination can be developed in a number of ways, including comparator evidence, evidence of similar impermissible discrimination of other employees, or direct evidence from statements or actions by the plaintiff's supervisor suggesting an impermissible animus. *See **Mammen v. Thomas Jefferson Univ**., 523 F. Supp. 3d 702, 721 (E.D. Pa. 2021),* citing ***Golod**, 403 F. App'x. at 703 n.2*); *see generally **Mitchell v. City of Pittsburgh**, 995 F. Supp. 2d 420, 430 (W.D. Pa. 2014)* (explaining that comparator evidence consists of allegations that "similarly situated individuals who were not members of the protected class were more favorably treated than plaintiff."). Yet, regardless of the way in which a plaintiff attempts to plead an inference of discrimination, the burden remains to tie any factual allegations offered in support to the adverse employment action. *See **Opsatnik v. Norfolk Southern Corp**., 335 F. App'x. 220, 223 (3d Cir. 2009)* (affirming dismissal of plaintiff's race discrimination claim where he had "failed to present evidence suggesting a link between purported comparators and the motivations of the decision-makers who terminated [him]."); ***Wilkins v. Bozzuto Assocs., Inc.***, *No. CIV. 09-2581, 2009 WL 4756381, at \*2 (E.D. Pa. Dec. 10, 2009)* (finding that plaintiff's factual allegations presented no more than a "mere possibility" that Plaintiff's right to relief existed where he failed to note even one occasion where his supervisor who had terminated him expressed or displayed racial bias).

Here, Plaintiff has failed to plead any facts sufficient to give rise to an inference that his termination was due to an impermissible discriminatory animus. For example, Plaintiff makes little attempt to plead the existence of any relevant comparators, except for the "naked assertion" that,

after returning to work in November of 2020, he "began feeling he was being held to standards that were not being used for other employees in the company." Pl.'s Second Am. Compl., at ¶ 19 (ECF Doc. No. 9, at p. 7). Not only does Plaintiff fail to tie this to his race, he also neglects to even generally identify comparator instances or individuals that might plausibly support that claim. Consistent with the Supreme Court's directives in **_Iqbal_** and **_Twombly_**, this Court has not hesitated to find such allegations insufficient to support an inference of discrimination. *See **Jenkins v. Polysciences, Inc**., No. 16-6616, 2017 WL 1361689, at \*3 (E.D. Pa. Mar. 29, 2017)* (dismissing discrimination claim where "Plaintiff merely assert[ed] the legal conclusion that he was treated differently than 'similarly situated Caucasian . . . employees[.]").

Moreover, Plaintiff fails to identify any statements or actions *by his supervisor*, Meredith Miller, or any person bearing responsibility for the decision to terminate his employment that might suggest a racially discriminatory animus. Rather, Plaintiff's only factual allegations attributable to Ms. Miller are that she confronted him about his use of inappropriate language, advised him of an issue with his work performance, and asked him to perform a job task which he refused. Pl.'s Second Am. Compl., at ¶¶ 28, 30, 32 (ECF Doc. No. 9, at pp. 9-10). Indeed, while Plaintiff does allege that a maintenance manager hung a picture of him with a caption he found offensive, he has not plead any supervisory relationship with this individual, or that this individual had any decision-making responsibility relating to his termination. Similarly, while he alleges that between 2017 and 2019, other employees made demeaning remarks about him and about African American people, not only were these alleged remarks long-removed from the time of his termination in February of 2021, neither are alleged to be supervisors of Plaintiff or to have participated in the decision to terminate him. *See **Ramirez v. Palmer Twp**., 292 F. Supp. 3d 609, 624 (E.D. Pa. 2018)* (noting that "[s]tray remarks by non-decision makers or by decision makers

11

unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision."). Still, even assuming *arguendo* that these employees were Plaintiff's supervisors at the time, this Court has previously discarded remarks that are far removed from the alleged adverse employment action. *See **Casselli v. Dejoy***, *2021 WL 254554, at \*4 (E.D. Pa. Jan. 26, 2021)* (concluding manager's derogatory remarks did not give rise to an inference of discrimination because they were far removed from the time period when plaintiff's alleged adverse employment action had occurred). Moreover, other than his termination, Plaintiff's Second Amended Complaint fails to identify any "unequal terms and conditions" that could be deemed an adverse employment action.

Beyond these allegations, those remaining in Plaintiff's Second Amended Complaint are simply "naked assertion[s] devoid of [*any*] factual enhancement." As a result, Plaintiff's Second Amended Complaint fails to plausibly plead an inference that his termination had anything to do with his race or color. Accordingly, this Court should dismiss Plaintiff's "unequal terms and conditions" and "wrongful termination" claims with prejudice.

C.  Plaintiff's Second Cause of Action in His Second Amended Complaint Fails to Plead Facts Sufficient to State a Claim of Retaliation Pursuant to Title VII.

In Count II of his Second Amended Complaint, Plaintiff vaguely alleges retaliation which, for purposes of the instant motion, Defendant assumes is asserted under Title VII. In its first motion to dismiss, Defendant noted that Plaintiff's Amended Complaint failed even to amount to a "formulaic recitation of the elements of" a retaliation claim, but rather, read purely as a "defendant-unlawfully-harmed-me-accusation." See Defendant's Motion to Dismiss Plaintiff's Amended Complaint, at p. 14 (ECF Doc. No. 8, at pp. 14-15). In response, Plaintiff amends simply to include a broad allegation that each action cited in the Second Amended Complaint was reported to Defendant's Management. Pl.'s Second Am. Compl., at ¶ 35. In other words, Plaintiff amends

simply to plead a "formulaic recitation of the elements" of a retaliation claim. Of course, as the Supreme Court has made clear, however, pleadings of this nature will not do. ***Iqbal***, *556 U.S. at 678*. Accordingly, this Court must dismiss Plaintiff's retaliation claim.

Title VII makes it unlawful for an employer to retaliate against an employee for either "opposing any practice" made unlawful by the provisions of Title VII or for participating "in any manner" in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a). To establish a prima facie of retaliation, a plaintiff must plead facts plausibly showing that: (1) he engaged in activity protected by Title VII; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. ***Moore v. City of Philadelphia***, *461 F.3d 331, 340-41 (3d Cir. 2006)*.

The Third Circuit has explained that protected "opposition" activity includes both the filing of formal discrimination charges and informal protests of discriminatory employment practices, "including making complaints to management." ***Daniels v. Sch. Dist. of Philadelphia***, *776 F.3d 181, 193 (3d Cir. 2015)*. In order to constitute protected activity, however, a complaint "must be specific enough to notify management of the particular type of discrimination at issue." ***Kier v. F. Lackland & Sons, LLC***, *72 F. Supp. 3d 597, 616 (E.D. Pa. 2014)* (quoting ***Sanchez v. SunGuard Availability Servs., LP***, *362 F. App'x. 283, 288 (3d Cir. 2010)*)). Thus, "an employee has not engaged in protected opposition activity when he or she complains about unfair treatment but stops short of referencing a protected characteristic as the basis for the unfair treatment." ***Kier***, *72 F. Supp. 3d at 616*, citing ***Curay-Cramer v. Ursuline Acad. Of Wilmington, DE***, *450 F.3d 130, 134-35 (3d Cir. 2006); see also **Daniels**, 776 F.3d at 193* ("[I]n determining whether a plaintiff

adequately opposed discrimination, we look to the message conveyed by a plaintiff's conduct rather than the means of conveyance.")

Additionally, to establish a casual link between protected activity and an adverse employment action, a plaintiff must plead facts sufficient to raise an inference that his protected activity was the reason for the adverse employment action. ***Strozyk***, *357 F. Supp. 3d 485*. To do so, a plaintiff may rely on the temporal proximity between two events if the level of proximity is "unusually suggestive" of a link. *See **Clark Cnty. Sch. Dist. v. Breeden***, *532 U.S. 268, 273-74 (2001)* ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality . . . uniformly hold that the temporal proximity must be very close."); ***Lauren W. ex rel. Jean W. v. DeFlaminis***, *480 F.3d 259, 267 (3d Cir. 2007)* (finding two-month gap between plaintiff's complaint and the first adverse action against Plaintiff not to be so "unusually suggestive of retaliatory motive" that the timing alone could establish the necessary causal connection.). Beyond temporal proximity, a plaintiff may also point to a pattern of antagonism in the period between the protected activity and the allegedly retaliatory action. ***Lauren W.***, *480 F.3d at 267*. Ultimately, however, this Court has observed that "a plaintiff asserting a claim of retaliation has a higher causal burden than a plaintiff asserting a claim of direct status-based discrimination." ***Strozyk v. Phoenixville Hosp.***, *357 F. Supp. 3d 485, 493 (E.D. Pa. 2019)* (quoting ***Carvalho-Grevious v. Delaware State Univ.***, *851 F.3d 249, 257-58 (3d Cir. 2017)*.

Here, Plaintiff's Second Amended Complaint fails to state a claim for retaliation under Title VII because Plaintiff has failed to sufficiently plead engagement in protected activity or a causal connection between the purported protected activity and his termination. As noted, an employee has *not* engaged in protected activity when he complains about unfair treatment *but stops*

*short of referencing a protected characteristic* as the basis for purported unfair treatment. ***Kier***, *72 F. Supp. 3d at 616*. Yet, in nearly every allegation in Plaintiff's Second Amended Complaint in which he asserts he made a complaint to Defendant about an incident at work, he stops short of referencing race. For example, Plaintiff first alleges that, in August of 2020, he reported having observed two co-workers stealing scrap metals from Defendant's dumpsters in violation of company policy. Pl.'s Second Am. Compl., at ¶ 16 (ECF Doc. No. 9, at p. 6 ). This is quite literally not at all related to Plaintiff's race. Next, Plaintiff alleges that in January of 2021, he reported to his supervisor that a maintenance manager had posted a picture of him on his door with a caption he found offensive. Pl.'s Am. Compl., at ¶ 21 (ECF Doc. No. 9, at pp. 7-8). Yet, although Plaintiff alleges that he subjectively believed this to be racially motivated, he does not allege that he shared this belief with anyone. Rather, he simply states that he "reported the incident to Miller[.]" ***Id.*** Moreover, in the very next paragraph of his Second Amended Complaint, Plaintiff alleges that he suggested to human resources after the same incident that he was "repeatedly feeling discriminated against," but makes no reference to the basis for any purported feelings of discrimination. Pl.'s Second Am. Compl., at ¶ 22 (ECF Doc. No. 9, at p. 8).[2]

Additionally, a cursory review of Plaintiff's amendments concerning retaliation demonstrates that his pleading in this respect suffers from essentially the same flaw as his hostile work environment claim—rather than pleadings facts, it pleads formulaic statements of elements. For example, in an attempt to plead one of the most well-understood examples of opposition conduct, i.e., making complaints to Management, Plaintiff broadly asserts that over the course of eighteen years, he made repeated requests to Defendant to address the alleged discriminatory

---

[2] Although Plaintiff's alleged complaint of a racial statement being used in 2017 could theoretically be deemed protected activity, Plaintiff has failed to plead facts to plausibly link that complaint to his termination from employment approximately four (4) years later.

conduct, and later that "each of the actions cited herein were reported to Management." See Pl.'s Second Am. Compl., at ¶¶ 14, 35 (ECF Doc. No. 9, at p. 11). This is, again, devoid of any facts tending to show actual engagement in protected activity, and falls woefully short of the pleading standard required by Federal Rule of Civil Procedure 8(a).

Finally, Plaintiff also cannot sustain his burden of establishing a causal connection between any alleged protected activity and his termination. Indeed, Plaintiff's allegations in this respect are nothing more than "labels and conclusions" and Plaintiff merely offers the "unadorned, the defendant-unlawfully-harmed-me accusation" that the Supreme Court has confirmed is improper under Federal Rule of Civil Procedure 8(a). Indeed, Plaintiff must do more than provide "a formulaic recitation of the elements" to succeed. He has not. Therefore, based upon the foregoing, Plaintiff's Title VII retaliation claim should be dismissed as a matter of law.

## V.    CONCLUSION

Based upon the foregoing, Defendant Bollman Hat Company respectfully requests that this Court grant its Motion to Dismiss to enter an Order dismissing Plaintiff's Second Amended Complaint, with prejudice.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER**
  **COLEMAN & GOGGIN**

BY:   _____
  LEE C. DURIVAGE
  Attorney ID No. 205928
  2000 Market Street, Suite 2300
  Philadelphia, PA  19103
  P: (215) 575-2584/F: (215) 575-0856
  E-mail:  lcdurivage@mdwcg.com

  Attorney for Defendant

Dated: May 12, 2022

16

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

GREGORY NELSON                    :
                                  :
        vs.                       :          CIVIL ACTION NO. 22-00228
                                  :
BOLLMAN HAT FACTORY               :

**DEFENDANT'S CERTIFICATION FOR SUBMISSION OF DISPOSITIVE MOTION**

     1.     Pursuant to Section II(B)(5) of the Honorable John M. Gallagher's Policies and Procedures, the undersigned counsel contacted plaintiff's counsel by email on March 17, 2022 and requested a meet and confer regarding Defendant's anticipated Motion to Dismiss

     2.     Thereafter, defense counsel and plaintiff's counsel met and conferred by telephone to discuss the substance of Defendant's anticipated motion, with defense counsel explaining the basis for the motion as: (1) that the Pennsylvania Labor Relations Act ("PLRA") is inapplicable to the action as it does not involve labor union activity, and (2) that Plaintiff's Complaint fails to plausibly state claims under Title VII of the Civil Rights Act of 1964.

     3.     Ultimately, though the parties successfully reached a common understanding with respect to Plaintiff's PLRA claim, the parties could not reach a resolution on the substance of Defendant's Motion to Dismiss as it relates to Plaintiff's Title VII claims.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**

BY: _____
         MICHAEL C. BURKE
         Attorney for Defendant

Dated: <u>May 12, 2022</u>

## CERTIFICATE OF SERVICE

I, Lee C. Durivage, Esquire, do hereby certify that a true and correct copy of Defendant Bollman Hat Company's Motion to Dismiss Plaintiff's Second Amended Complaint and Memorandum of Law in Support of its Motion to Dismiss was served upon all counsel by electronic service through the Court's ECF system at the following address:

Larry W. Miller, Jr., Esquire
**Miller Law Group, PLLC**
25 Stevens Avenue
West Lawn, PA 19609

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**

BY: _____
LEE C. DURIVAGE
Attorney for Defendant

Dated: May 12, 2022

18